# IN THE COURT OF APPEALS OF IOWA

No. 15-0847
Filed July 9, 2015

**IN THE INTEREST OF C.M.,**
**Minor Child,**

**S.M., Mother,**
**Appellant,**

**S.M.,Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Warren County, Kevin Parker, District Associate Judge.

A mother and father separately appeal the juvenile court's order terminating their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Nancy Pietz, Des Moines, for appellant mother.

Dawn Bowman of Bowman Law Office, Pleasantville, for appellant father.

Thomas J. Miller, Attorney General, Kathryn Lang, Assistant Attorney General, John Criswell, County Attorney, and Tracie Sehnert, Assistant County Attorney, for appellee State.

M. Kathryn Miller of the Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

A mother and father separately appeal the juvenile court's order terminating their parental rights to their child, C.M.

## I. Factual and Procedural Background

C.M. was born on May 19, 2014. Concerns with the parents' ability to care for the child were reported to the Department of Human Services (DHS) before the family left the hospital. DHS sent a worker to the hospital to perform a child-in-need-of-assistance (CINA) assessment. The worker observed:

> [T]he parents [are] minimally able to meet [C.M.]'s needs despite nursing staff and [the paternal] grandmother being present to assist and support them. [The father] did not engage with [C.M.] except for looking at him. [The father] asked several times if they could leave the hospital stating he wanted to go home and sleep because it was hard to sleep at the hospital.
> . . . Nursing staff prompted [the mother] to feed [C.M.] three times before she did this. She did attempt to breast feed but became visibly frustrated after only a few minutes and began speaking loudly to [C.M.] to "stop doing that" when he had his arm in the way and wasn't latching on. She spent approximately 3–5 minutes total trying to get him to latch on before she set him down and said he wasn't hungry at the time.

The worker learned both parents had a history of significant mental health diagnoses. Both parents had been diagnosed with mild mental retardation and received social security income. The mother had a prior schizoaffective disorder diagnosis, the father reported a psychotic disorder diagnosis, and both parents were diagnosed with ADHD. The mother had a history of noncompliance with prescribed medication regimens. Both parents received supportive community living (SCL) services, which included assistance with basic life skills such as housekeeping, hygiene, and money management. The father was on probation for serving alcohol to minors. Both parents had difficulty managing anger.

The worker concluded:

> There are no concerns that [C.M.] isn't loved or wanted by both parents, or that they won't try their best to provide the care he needs. Concerns are that [the parents] both have diagnosed intellectual deficits which will impact their ability to recognize and respond appropriately to the needs of [C.M.].
> . . . There is no safe way to allow [the parents] to parent without placing [C.M.] in danger. . . . [The parents'] ability to react to [C.M.]'s needs in an appropriate manner places him in danger. . . . The most basic need for food is something that requires prompting.

The child was removed from his parents' care and placed with his paternal grandmother. He was adjudicated a child in need of assistance on June 30, 2014.

The parents were afforded services to help them rectify the circumstances necessitating removal. They were offered visitation, FSRP (family safety, risk, and permanency) services, individual therapy, psychiatric services, parenting classes, and continuing SCL services. At the beginning of the case, the parents visited the child often, but their utilization of other services was inconsistent. By November 2014, the parents stopped attending parenting classes after they reported they were no longer receiving benefits from the class's "Necessity Pantry." In November, the parents visited C.M. only one time despite having made several more visitation appointments with a DHS worker in person who observed the mother write down the appointment times and dates in a planner. The worker even took C.M. to the parents' house on one occasion for visitation, but the parents did not answer the door or their telephone. The FSRP reports for December, January, and February indicate the parents had entirely ceased participating in services and attending visitations. The supervising worker was in

contact with the parents throughout this period and continued to suggest the parents visit the child, but the parents expressly declined.

The State petitioned the juvenile court to terminate the parents' rights to C.M. The juvenile court terminated both parents' rights on April 30, 2015, pursuant to Iowa Code sections 232.116(1)(d), (e), and (h) (2013). Each parent now separately appeals.

## II. Standard of Review

We review termination of parental rights proceedings de novo. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## III. Discussion

Our de novo review is a three-step analysis: first, we determine if a statutory basis for termination exists under Iowa Code section 232.116(1); second, we determine whether termination would be in the child's best interests pursuant to section 232.116(2); lastly, we consider whether the mitigating factors delineated in section 232.116(3) weigh against termination. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

As to the first step, we agree with the juvenile court that section 232.116(1)(h) supports the termination of both parents' rights.[1] Section 232.116(1)(h) provides the court may order the termination of both the parental

---

[1] The mother on appeal challenges the juvenile court's reliance on sections 232.116(1)(d) and (e) to support termination. However, we may affirm if any one of the statutory grounds relied upon by the juvenile court supports termination. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). Because we find subsection (h) supports termination, we need not address subsections (d) or (e).

rights with respect to a child and the relationship between the parent and the child if it finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence[2] that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.[3]

The child is currently one year old, and he has been adjudicated CINA. He had been removed from his parents' care for the last ten consecutive months at the time of the termination hearing. The record leaves us with no doubt that C.M. cannot be returned to his parents' custody without exposure to the same adjudicative harm that resulted in his removal and CINA adjudication. Even at the peak of the parents' utilization of services, they did not "seem to know expectations for [C.M.]'s growth and development without assistance" and were "unable to read [C.M.]'s cues without assistance." The FSRP reports indicate the parents "continue[d] to struggle with providing basic care" and "ha[d] difficulty meeting their own needs." With the additional consideration of the parents' more recent display of disinterest in the child, it is clear C.M. cannot be returned to

---

[2] "Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation and internal quotation marks omitted).

[3] The child cannot be returned to his parents' custody if he would be exposed to "some harm which would justify the adjudication of the child as a child in need of assistance." *See* Iowa Code § 232.102(5)(a)(2); *see also In re A.S.*, No. 12-1534, 2012 WL 5356160, at *3 (Iowa Ct. App. Oct. 31, 2012) ("The State meets its burden to prove this element if it presents clear and convincing evidence the children have suffered or are imminently likely to suffer an adjudicatory harm upon their return.").

their custody at this time. The juvenile court's reliance on section 232.116(1)(h) to support its termination order was proper.

It is also in the child's best interests that the parents' rights be terminated. *See* Iowa Code § 232.116(2). In consideration of the child's safety and his physical, mental, and emotional needs, C.M. should be in a permanent placement with a capable caretaker as soon as possible. Such a placement is the best option for furthering his long-term nurturing and growth. Both parents argue termination is not necessary because C.M. is in the custody of his paternal grandmother. *See* Iowa Code § 232.116(3)(a). Though it is true the court granted temporary legal custody to the paternal grandmother under supervision by DHS, this fact does not militate against termination such that our best-interests determination is overcome. We affirm the juvenile court's termination order under the section 232.116 three-step analysis as to both parents.

The mother raises three additional issues. First, she claims the State failed its requirement to make reasonable efforts "to make it possible for the child to return safely to the family's home." *See* Iowa Code §§ 232.102(5)(b), (10)(a); *see also In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). We consider the "type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1). The record shows a substantial amount of services offered, including visitation, FSRP services, individual therapy, psychiatric services, parenting classes, and SCL services. Over the course of the case, the parents received considerable encouragement from DHS and the FSRP worker to take advantage of these services. The mother argues the State didn't do enough to make those services available, but

the record shows that, to the contrary, the parents explicitly turned down the State's numerous outreaches offering services. We find the State made reasonable efforts to assist the parents with reunification.

Second, the mother asserts the juvenile court erred in failing to grant her a permanency extension pursuant to Iowa Code section 232.104(2)(b). She argues there is a reasonable likelihood that the child could be returned to her care if she were given an additional six months of services. The record belies her claim. The parents' involvement in services and display of interest in parenting the child had dwindled to nearly nothing by the time of the termination hearing as evidenced by their complete lack of participation in visitation and other services. "In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We find the circumstances of this case indicate the need for removal would continue to exist at the end of the requested extension, and such an extension should therefore not be granted.

Lastly, the mother argues the juvenile court erred in denying her motion requesting C.M. be removed from the paternal grandmother's custody and placed instead with the maternal great-grandmother.[4] She has failed to allege any reason the child's current custodial arrangement is detrimental, and the

---

[4] The maternal great-grandmother, who is a member of the Comanche Nation, claims C.M. would be "accepted as a member of the Comanche tribe" if placed in her care. However, following a formal inquiry, the Comanche Nation has officially determined C.M. is not eligible for enrollment and has declined to intervene. The Comanche Nation's determination is legally conclusive. *See* Iowa Code § 232B.4(3).

record shows the current placement has been positive for the child's development. The juvenile court did not err in denying the motion.

**AFFIRMED ON BOTH APPEALS.**